

# OFFICE OF
# THE ATTORNEY GENERAL
### AUSTIN, TEXAS

Gerald C. Mann
ATTORNEY GENERAL

Honorable Harry Knox, Chairman
State Board of Control
Austin, Texas

Dear Sir:

Opinion No. O-3885

Re: Construction of Subsection (1),
Section 2, Senate Bill No. 423,
47th Legislature, the depart-
mental appropriation bill, in
relation to certain statutes.

We are pleased to comply with your letter of August
25, 1941, which we quote:

"Statement:  Bearing in mind Article 603 and
all articles of the Statute with reference to public
printing, as well as the articles in Chapter 3, Pur-
chasing Division, more especially Articles 634 to
664 inclusive, and any and all other pertinent provi-
sions of the Statutes.

"Question 1.  (a) Does subsection 'c' of Sec-
tion 2, of the General Provisions of the Departmental
Appropriation Bill, passed by the 47th Legislature,
conflict with the above referred to Statutes, and if
so, does said Section 'c' supersede the above articles,
and is the Board of Control bound to be governed there-
by, or are the above referred to Statutes still the
governing authority in such matters?

"(b)  Does subsection 'd' of Section 2, of said
General Provisions of the Departmental Appropriation
Bill aforesaid, conflict with the above referred to
statutes, and if so, does said subsection 'd' supersede
the above articles, and is the Board of Control bound
to be governed thereby, or are the above referred to
Statutes still the governing authority in such matters?

"Question 2.  Said subsections 'c' and 'd' afore-
said, being provisions of the Departmental Appropria-
tion Bill and not in either the Eleemosynary, Educa-
tional, or Judiciary Appropriation Bill, if you hold
they supersede the above referred to articles, do they
apply to either the Eleemosynary, Educational or Judi-
ciary Bill, although not contained therein?"

And with your supplemental letter of September 5, 1941, which we
quote:

"Further supplementing my letter to you under date of August 25, 1941, in which a ruling was requested with reference to the so-called 'encumbrance' provisions of Section 2 of the General Provisions of the Departmental Appropriation Bill, passed by the 47th Legislature, the Board of Control desires to know:

"Question 1. Do the provisions in Section 2 conflict with Article 660 of the Revised Civil Statutes covering 'Emergency Purchases?'

"Question 2. Under Subdivision 'd' providing: 'The Comptroller shall * * * have the power, and it shall be his duty, from time to time, to adopt, publish and enforce reasonable rules and regulations not inconsistent herewith, for the purpose of carrying out the provisions of this Act' * * * can the Comptroller exempt any purchase from the provisions of Section 'C,' and more especially that provision that requires a purchase order giving the price of the article proposed to be purchased?"

Articles 603, 634, 660 and 664, Revised Civil Statutes of Texas, read in such order as follows:

"Article 603. The Board shall administer the laws relating to the various departments, boards, institutions and public officers of the government herein named, and peform the additional duties and exercise the additional functions provided for in this title, and may combine under it the following subdivisions of its work:

"1. Division of Public Printing.
2. Division of Purchasing
3. Division of Auditing.
4. Division of Design, Construction and Maintenance.
5. Division of Estimates and Appropriations.
6. Division of Eleemosynary Institutions.
7. And such other divisions of its work as it may find necessary in the administration of its duties."

"Article 634. The Board of Control shall purchase all the supplies used by each Department of the State Government, including the State Prison System, and each eleemosynary institution, Normal school, Agricultural and Mechanical College, University of Texas, and each and all other State Schools or Departments of the State Government heretofore or hereafter created. Such supplies to include furniture and fixtures, technical instruments and books, and all other things required by the different departments or institutions, except strictly perishable goods."

Hon. Harry Knox, Chairman, Page 3

"Article 660. In case of emergency and where articles are necessary and needed by any institution, and it is impracticable to include them in the annual contract, the superintendent shall make a requisition for same to the Board of Control; and the Board may forthwith purchase such article in the open market."

"Article 664. The Board shall frame and transmit to each institution a system of rules and regulations for the purchase of such supplies as have been designated by them as perishable and as special supplies for educational institutions, and to which, conformity by all institutions is hereby required."

Subsection (1) of Section 2 of Senate Bill No. 423, 47th Legislature, the departmental appropriation bill, reads as follows:

"(a) The Comptroller shall approve in advance of payment the amount of all expenditures to be paid from funds for which appropriations have been made and shall encumber and/or allot all appropriations against which purchase requisitions or orders are issued; and the Comptroller shall have the authority to encumber and/or allot such other appropriations as he deems essential to a proper and uniform system of record-keeping on an encumbrance or allotment basis.

"(b) The Comptroller shall have the authority and he is hereby directed to require all departments, commissions, boards, divisions, institutions, agencies, and other units of the State Government for which appropriations are made in this Act to furnish such information as he deems necessary to maintain appropriations on an encumbrance and/or allotment basis.

"(c) After the purchase requisition has been approved by the Board of Control, but before a purchase order for the article or articles requisitioned has been made, it shall be the duty of the Board of Control to furnish the Comptroller for his approval the original and a copy of said purchase order, which shall show the department, commission, board, division, institution, agency, or other unit of State government making the requisition, the requisition number, the purchase order number, the appropriation and number out of which the purchase is to be paid, a description of the article, the cost of the article, the person or firm from whom the article has been purchased, and such other information as the Comptroller may require. When the Comptroller has approved the amount of the purchase order he shall return the original to the Board of Control for the making of the order and shall retain the copy of said purchase order for his records.

"(d) The Comptroller shall have the authority to prescribe such forms as he may deem necessary to carry this Act into effect, and he shall further have the power and it shall be his duty, from time to time, to adopt, publish and enforce reasonable rules and regulations not inconsistent herewith for the purpose of carrying out the provisions of this Act.

"(e) If any department, commission, board, division, institution, agency, or other unit of the State Government shall fail or refuse to furnish the Comptroller any or all information required under the terms of this Act, or which the Comptroller requires under the terms of this Act, the Comptroller shall not write or issue any warrant whatsoever on any of the appropriations made for the benefit of such d efaulting department, commission, board, division, agency or other unit of State government until the required information has been furnished.

"(f) This Section shall be effective from and after September 1, 1941, and the Comptroller shall cause same to become operative as soon as practicable thereafter, and not later than January 1, 1942."

Articles 603, 634, 660 and 664, and other related statutes, confer certain duties and powers upon the Board of Control regarding the purchasing of supplies for various state departments and institutions.

Subsection (1) of Section 2 of Senate Bill No. 423 contains certain new requirements incident to the expenditures of the sums appropriated in Section 1 of the Act. The expenditures for which appropriations are made relate to the purchase of supplies for various state departments. The two-fold purpose of the requirements in Subsection (1) is to prevent the overdrawing of items of appropriation and to provide a better bookkeeping system for the state. The requirements are new. They pioneer in the field of stricter and more accurate bookkeeping for the state. They appertain not to the statutory powers of the Board of Control, but to the Comptroller's method of handling the payment of the purchases made by the Board of Control.

These provisions do not repeal, or constitute an attempt to repeal, existing statutes. Their vitality does not depend upon any change in the statutory law of the state. The legislature has not declared that the Board of Control shall no longer purchase supplies or otherwise invaded statutory powers of the Board. It has merely stipulated that payment out of the appropriation made shall be subject to the described additional requirements. The Board of Control is still the purchasing agency and in other respects charged with the administration of the laws relating to state departments. The Comptroller is not authorized to approve purchases as purchases; he is merely required to abide certain additional regulations as to the payment for such purchases wherefore he may keep the books of the state in the manner decided upon by the Legislature.

With the wisdom or propriety of the additional requirements, neither this department, nor the Comptroller, nor the Board of Control, can have any concern. Each must follow the mandate of the Legislature if the requirements are within the bounds of law.

In the very nature of the stupendous job of keeping the books of this state, the Legislature can only declare purposes, prescribe requirements, define bounds of authority, and thereupon entrust administration to the departments of state involved. It has, as it necessarily must have done, charged the Comptroller with the duty of promulgating thenecessary rules and regulations to effect the legislative purpose; it was compelled to give wide latitude to the Comptroller to accept the duties and responsibilities imposed and execute the legislative mandate in the most feasible manner.

Purchases by the Board of Control, pursuant to its statutory duties and powers, may be classified as of three types. First, the regular purchase of isolated items upon the basis of competitive bids relating to each individual purchase. Second, purchases under annual contracts awarded after competitive bidding, which prescribe price and quality, quantity being a matter of subsequent needs and requirements. Third, emergency purchases pursuant to Article 660 under which the requirement of competitive bids, and that requirement alone, is relaxed.

Under Subsection (1) of Section 2 of Senate Bill 423, it is mandatory upon the Comptroller to maintain all appropriations made in Section 1 of the Act on an encumbrance and/or allotment basis. Necessarily in the enactment of Subsection (1) the Legislature did so in contemplation of the three methods or types of purchases. Hence the alternative "encumbrance and/or allotment basis." The first type of purchase is adaptable to maintenance upon a strict encumbrance basis. The second and third types of purchase are more adaptable to maintenance upon an allotment basis. Because of the multitudinous details and variations inherent in running the business of the state, and in purchasing supplies for departments of state, numerous and different rules and regulations must be adopted, published and enforced by the Comptroller to achieve the type of bookkeeping required by the Legislature. Hence the broad rule-making power vested in the Comptroller.

Compliance upon the part of the Board of Control with the requirements of Subsection (1), and with the rules and regulations promulgated by the Comptroller pursuant thereto, will not circumscribe or restrict the statutory powers of the Board of Control or obstruct the Board of Control in the execution of its powers and duties of purchase in the manner provided for and authorized by statute.

Subsection (1) should not be strictly or unreasonably construed. In its very nature it requires liberality of construction. The recognition and requirement that appropriations be maintained on an allotment basis presupposes the necessity of estimates of expenditures under the second and third methods of

purchase and the reserving by the Comptroller of a certain portion of an appropriation for the payment of obligations yet to be incurred. Were this not true, and were estimates and reservations of appropriations not contemplated by the Legislature, the requirement would have been only that appropriations be maintained on an encumbrance basis. Where an estimate, and a corresponding allotment develops to be either too low or too high, adjustment can be made and it is contemplated under Subsection (1) that adjustments will have to be made. This the Legislature deemed more satisfactory, from the standpoint of the books of the state, than the conditions heretofore existing under which the status of an appropriation account was all the while uncertain and incapable of ascertainment.

Statutes cannot, of course, be successfully amended or repealed in an appropriation bill. But the placing of restrictions upon the expenditure of moneys appropriated in the bill inheres in the legislative control over the State Treasury. Subsection (1) of Section 2 of Senate Bill 423 does not constitute an attempt to accomplish the former but the exercise of the latter.

It is therefore the considered conclusion of this department that the provisions contained in Subsection (1) of Section 2 of Senate Bill 423 do not conflict with, supersede, amend or repeal Articles 603, 634, 660 and 664 of the statutes of Texas, or other related statutes.

Your supplemental letter propounds the question, in addition to the one relating to Article 660, of whether the Comptroller may exempt any purchase from the provisions of Section c of Subsection (1).

It is our opinion that Section c was not intended to apply to every purchase transaction and that the Comptroller does have the authority to exempt purchases therefrom if in the nature of such purchases, otherwise authorized by the statutes of Texas, they are incapable of being subjected to the strict requirements of Section c. As mentioned above, it is quite obvious that the Legislature could not anticipate any and every contingency that might arise from a bookkeeping standpoint and expressly legislate upon each and every possible purchase transaction authorized by the statutes. Necessarily much must have been left to the discretion of the administrative department charged with enforcement. Therein lies the explanation and necessity for the broad rule-making power and discretion expressly vested in the Comptroller's department. The Comptroller is therefore authorized to exempt purchases from the letter of Section c when such is inherently necessary, and to handle such purchases in the manner necessary and feasible to maintain appropriations on an encumbrance and/or allotment basis as otherwise required by the various provisions of Subsection (1).

The second question in your letter of August 25th inquires if certain provisions of Subsection (1), contained only in Senate Bill 423, the departmental appropriation bill, apply either to the

Eleemosynary, the Educational or the Judiciary appropriation bills, although not contained in them. They do not.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/s   Zollie C. Steakley

APPROVED OCT. 31, 1941
/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
BY BWB, Chairman

ZCS:ej:jrb